Your Honor, I appreciate that. Good morning. May it please the Court. My name is Vic Schulze. I'm the Senior Deputy Attorney General. I represent the Attorney General and the Warden. With the permission of the Court, I'd like to reserve two minutes, please. This is another Polk-Kaslan-Biefer naked case. We have challenged the District Court on both procedural and substantive issues, however, in this case. You will recall that both parties agree, and the District Court judge, that would be Judge Dawson in Las Vegas, admitted that this is an unexhausted claim. The State Courts were never presented with this claim, the due process claim of alleged instructional error under Kaslan. Now, this is another window case. The District Court in this case found that this claim, had it been raised, would be defaulted, and under Kaslan v. Stewart, he applied the State Bar in the first order from 2009, and then in 2011 in his third order, those three orders in a series are in the first volume of our EOA. He then found cause and prejudice to override the procedural default that he applied. We have challenged his opinion, his decision on those issues, on a couple of different grounds. First of all, when the Strickland claim for failure of appellate counsel to raise the Byford claim, or to better argue the Byford claim in the direct appeal was raised, on page, I believe it's EOR 49, Judge Dawson cited the Nevada Supreme Court in the post-conviction appeal, and he applied what he called the law of the case doctrine. He said the Nevada Supreme Court would not revisit this case, because he said he cited the State Supreme Court cited the strength of the State's case. And therefore, there is no way that Pinkston would be able to show cause and prejudice. The law of the case doctrine doesn't apply here, because if you read that quote from the Nevada Supreme Court, what they said was that appellate counsel was not ineffective for failing to raise the claim in the direct appeal, because trial counsel specifically sufficiently argued the facts for the insufficiency, in her opinion, at trial on premeditation deliberation. If, in fact, trial counsel made that argument, and we've cited it to the closing argument in our briefing, if, in fact, that was argued sufficiently by trial counsel, that was raised under the Caslen instruction, because Caslen was the instruction that was given at trial. What Judge Dawson agreed in his order was that if the case had been remanded, or if Pinkston had been allowed to go back to State court for a successive petition in 2009, the cause and prejudice analysis there would have to be done under Byford. Well, we all agree, which is why we're here in these two cases, that Caslen and Byford are different law. The law of the case doctrine under State law requires an identity of law and facts for the doctrine to apply. Therefore, we believe that Judge Dawson erroneously applied the law of the case doctrine to find this claim defaulted, even though it's unexhausted. It was constructively exhausted and defaulted. We think that was erroneous. Why wasn't the denial of the direct appeal in 2000 an exhaustion and an establishment of law of the case? You're talking about Pinkston's direct appeal? Pinkston's direct appeal. This claim wasn't in the direct appeal. No, this claim as a Federal law claim was not raised. Correct. And I think we've all agreed with that. But the underlying State law claim, Pinkston's, the resolution of Pinkston's direct appeal was held and was filed a few days after Byford. A few days before, you're right, a few days after. And it seems pretty apparent. In fact, I think the Nevada Supreme Court made it clear in its denial of habeas in 2004, made reference to the fact that we knew what was going on. This was all deliberate. Now, in 2004, they used a vocabulary that comes from Strickland, the ineffective assistance of counsel vocabulary about reasonable probability. But in denying the direct appeal for the State law claim, Byford didn't, for all his success in either clarifying or changing State law, got no benefit because the court said it wouldn't have mattered. And a few days later, we come out with a direct appeal that's dismissed with this issue swept up without any explicit separate discussion, swept up in the end as being, we've reviewed the remaining contentions, raised this appeal, concluded they either lack merit or need not be addressed. That's it. Correct. Well, it seems to me that saying, like they said in Byford, doesn't matter here. Much as they said in 2004, didn't matter here, no reasonable probability, using the ineffective assistance of counsel vocabulary. But I don't know why the Federal Court should assume that what was dismissed in 2000 would be viewed differently in, pick your subsequent year, 2008. Because the Garner held, the Nevada Supreme Court held in the Garner decision in 2000, they were not going to apply Byford retroactively. And they did that in what I termed in my brief, a radical prospectivity approach. What the Nevada Supreme Court apparently said was. And wrong, as it turns out. Well, wrong according to State law, Judge. According to what the Nevada Supreme Court said, relief would have been granted to Byford because that was his case. And then for any case where the conviction was had prior to Garner, they were not going to apply Byford. Pinkston was convicted in 1997. Byford didn't come out until 2000. But Pinkston, I mean, I can't avoid what they said in 2004 in rejecting the ineffective assistance of counsel claim. But the ineffective, in Pinkston's post-conviction appeal, if that's what you're talking about. It is. They relied specifically on trial counsel's argument on the alleged insufficiency of premeditation deliberation. That was under the Caslen instruction. What Judge Dawson said was, he said this wasn't a defaulted claim under Cassett because there would be no State court corrective process. But that was wrong because he applied the law of the State doctrine. And everybody in the courtroom agrees that Caslen and Byford are completely different law. They're a different standard. That's why we're here. So the one claim was denied under Caslen. Judge Dawson agrees that the second claim would have to be analyzed under Byford. If that law is different, the law of the case doctrine simply doesn't apply. I would point out one more point. And I am the guilty party on the theory that you commented on about ten minutes ago on the window reopening and then the window closing again. That would be my theory. I was the one that argued that in the briefing. I've got to tell you. NECA reopened that statute of limitations. Was that suggestion ever made previous to this appeal? I don't know. It is a remarkably callous position. Why is it no? Why is it callous? It suggests that the State court, the State supreme court in NECA basically says we were wrong before. That's correct. And wrong before in a way that you think affects Pinkston. Yes, sir. But nobody says anything to Pinkston. The case is proceeding in Federal court. There are proceedings before the Federal district court. You have the opportunity to say, oh, Judge, actually the door is now open over at State court thanks to NECA. Don't say that. Let the year go by and say, oh, gee, you know, under State law you were entitled to this. And now you can't have it. Judge, Pinkston had actual knowledge of NECA. As I pointed out in our case, her attorneys filed an amicus brief in that case, as did I. The Federal public defender in Las Vegas was an amicus party in that case. So when NECA came out, NECA's attorneys, the Federal public defender, had actual knowledge of that case because Mr. Pichetta was the attorney over there that filed a pretty good amicus brief, probably better than ours. And they're already in Federal court. In Federal. And frankly, let's move out of this context. I looked for and didn't find anything that suggested a claim that's been exhausted can, in effect, be unexhausted by the State court saying, oops, we were wrong before, the window's now open, waiting a year and then closing the window, and as a result losing the Federal exhaustion, which it previously had in hand. I wouldn't say that it was exhausted and it was unexhausted and then exhausted. State Supreme Courts can change their law and reopen windows just like the Federal habeas statute recognizes the U.S. Supreme Court can. It's the exact same. And this is not classic exhaustion. So I'm hypothetical. Suppose there had been actual exhaustion, there had been a Federal reference in the original State papers. NECA comes along and the State says, oops, we were wrong before, we're now open for business. And so in theory, as you've explained to us, the State's in a position, the State court is in a position to entertain papers on this issue. Petitioner doesn't file those papers. As a result, has the exhaustion that was previously possessed been lost because the window is open for business? No, no, no. Federal law clearly applies. You only have to exhaust a claim once. So why isn't that particularly different here? It's not. We're playing the exact same role, not asking the court to apply anything novel. So I guess I have a different point. Why isn't it just constructively exhausted? You know, because you're taking the position, right, that Byford represented a change in the law. Yes, under the U.S. Supreme Court law, yes. Okay. Even putting aside what was argued and I guess what the district court's analysis was, why isn't her claim just constructively exhausted on that basis? On what basis? Well, this claim was never the district court said that the claim was constructively exhausted under the law of the case doctrine because there would be no remedy if she went back because she wouldn't be able to override the cause and prejudice requirement for filing a successive and untimely habeas petition. Had we gone back in 2009, that would have been her second petition on the issue in state court, her second petition to allege any kind of post-conviction claims. Now, our position is that NECA, and it's not a novel position, NECA clearly reopened that window of opportunity for one year with a change in the law saying, as a matter of state law, and we think that's a matter of state law, because the U.S. Supreme Court in the cases that we've talked about here today, the U.S. Supreme Court has never held clearly in non-dicta language that a change in state law must apply either retroactively to cases that are final or to cases that are window cases. But they have strongly indicated that in Bunkley, Griffith, and Fiore, have they? No. I'm asking you the same question. If I could take an exception, Judge, in Griffith, what the Supreme Court said was that the new rules of constitutional law announced by the U.S. Supreme Court apply to window cases. Fiore said retroactivity is not an issue, because when the Supreme Court got its answer from the Pennsylvania Supreme Court, the Pennsylvania Supreme Court, Fiore said this was a clarification, not a new rule. In Bunkley, I would point out two things. First of all, even if the timeframe trigger language in Bunkley were not dicta, it would be barred under Teague v. Lane, because that didn't come out until 2003, and Pinkston's conviction was final in June of 2000. But moreover, the other problem is the dicta itself is inconsistent in Bunkley. Four times or five times, Bunkley says the triggering timeframe is finality. Six times, the U.S. Supreme Court in Bunkley said, and if you read that case carefully, six times they say no, the triggering timeframe is the date of conviction. So it begs the question, why is the U.S. Supreme Court in Bunkley so inconsistent on what the triggering timeframe is? I think it's obvious it's inconsistent because they're talking about dicta. That's not the issue that they dealt with. If that's dicta, the U.S. Supreme Court has never required the State courts to apply a new interpretation of State law even to window cases. And so the conflict in this case, and I would close my comments with this, initially these cases present as a conflict between the State Supreme Court and this Court's decision in Polk. In our view, the real conflict in this case is between Polk and Bunkley. Now, the District Court in this case and a number of cases coming down the pike on this issue have said and are going to continue to say we're obligated to follow Polk. I would suggest something different. I would suggest to you that it's clear there is a conflict between Polk and Bunkley. And if I were a U.S. District Court judge and I had a choice between a Ninth Circuit case and a U.S. Supreme Court case, I would choose to apply what the U.S. Supreme Court has said on that issue. Polk assumed Byford was a clarification. We now know it was not. The underlying rationale of Polk now has been pulled out from under it. We know that essentially the Polk ruling was essentially interpretation of State law. It turns out it was wrong. It sometimes happens. To the extent that Polk is wrong, Polk doesn't have any more validity. And that also includes for the application, that dicta of that application of Byford to window cases. That was done as a matter of State due process. The Nevada Supreme Court did cite Bunkley for the proposition, but Bunkley itself does not so hold and could not so hold because it would be tape barred, it was inconsistent language, and it was dicta. State courts get to make State law and Federal courts are bound by that. That's not something we grant deference to here. They're absolutely bound by it. So I would simply point out that the conflict in this case ultimately is not between Byford and Polk. It is between Polk and Bunkley. And when was Bunkley? When was Bunkley decided? 2003. So it precedes Polk. It precedes Polk. So you're going to tell the district courts to ignore what the Ninth Circuit said based on a previous Supreme Court decision? But, Your Honor, the Polk panel knew or should have known about the subject. You're basically arguing Polk is wrong, which is fine, but that's not going to get any traction with anybody. No, I'm not arguing Polk is wrong. What I'm arguing is that Polk's interpretation mandated by Bunkley of State law was wrong. And the Federal courts are bound by that. That's not any different than saying you should ignore it because it's wrong. I'm sorry, Judge? That's not any different than saying what Judge Clifton suggested. You're saying that, you know, telling district courts you should ignore Polk because it's wrong. But they can't, Judge, they can't ignore the Bunkley distinction between a clarification and a change in the law. As Judge Clifton indicated, you agreed, Bunkley was decided before Polk. Yes, sir. And so you have to assume that the Polk panel knew all about Bunkley when they decided Polk. Yes, yes. Now, you're saying they decided it wrongly. Doesn't mean district courts aren't bound by that wrong decision, right? I don't think one panel can overrule another panel. And until Polk is, and also until it's dealt with, it is controlling law. But the problem is its underlying assumption of what State law was was wrong, and we know that in there. That one is on the table because a subsequent change in State law is something that may justify our court's change. But Bunkley is not it. It preceded. So we can't do much about that one. Thank you, Judge. Because we helped get you there, we'll still give you a minute for rebuttal. Thank you, sir. Good morning. My name is John Lambrose. I'm here on behalf of Barbara Pinkston. And it's an honor to be here, Mr. Schulze. And I think that the argument that Mr. Polk cited in the argument against Ms. Babb and Ms. Babb-Bunkley has been completely irrelevant to any case that was decided before Byford was final or that was not final when Byford was decided, like Ms. Pinkston's case, like Ms. Babb's case before me. NICA says that specifically, and they say that citing Bunkley. And as Judge Clifton said earlier in the argument, they also identify Polk, Mr. Polk, as a defendant, as a Petitioner who gets the benefit of that due process argument. All Bunkley says is that once a State changes the law and narrows the scope of a criminal statute, anybody whose case was not final at the time of that narrowing, i.e., Byford. Because, remember, what NICA had to do was walk the Garner cat back. Because in Garner, they said, Polk, or Byford is not a constitutional rule, but it is a clarification, and we can see how everybody was confused. If you look at footnote 9 in Byford or, excuse me, in Garner, I'm sure it drove the Nevada Supreme Court crazy later on. Because what they had to say is, look, Garner, you were wrong, it wasn't a clarification, it was a new rule. So, really, all of this Bunkley-Fiori discussion, as Judge Navarro said in Elliott, is beside the point. What we're talking about is a Winship-Sandstrom claim. Whether or not there was a violation of due process, when, and if you read Byford, I think Byford, notwithstanding with what the Nevada Supreme Court said in Garner and NICA later, if you read Byford, they say in Byford, citing a case called Hearn that was decided in 1981, that premeditation and deliberation are elements of first-degree murder, of the mens rea for first-degree murder, and must be proved beyond a reasonable doubt. Did they cite Winship? No. But they used the word element, and they used the phrase beyond a reasonable doubt. Now, element, as Apprendi v. New Jersey tells us, is a pretty important constitutional word. Beyond a reasonable doubt? Need I say more? That's a given. So when Byford says that, everybody in the world in Nevada has got to think Byford is a rule of constitutional law, until three months later when the Court says, oops, Byford is not a constitutional case, it's a State case. All right. I think that pretty much clears up why Polk applies to this case, because what Polk said was, look, you got it wrong, Nevada, you can't say in Garner that those are not three elements of your statute, because you've said that in Byford. So I don't care how you look at it, but if you don't look at it through a Federal lens, we have to. That's what Judge Fletcher said in Polk. So here we go. Polk's the law. If Polk's the law, let me just address why it is we get to the Polk claim in my case. You have at least two different problems, and I'll let you organize it, but at some point I want you to address both of them. Okay. One of them is the one that you heard in the last case, the Breck harmless error and so forth. Yes. And the one that I think you'll probably get to, but I want to focus on, is how is it that your client can get there, given that your client didn't actually exhaust a Federalized claim, apparently getting there through ineffective assistance of counsel, but that requires demonstrating unprofessional or deficient performance under Strickland, and that seems to me is a little bit of a struggle. Okay, and I think I can get there. First of all, let me just dispatch with this technical exhaustion law of the case. You've got to neek a remedy nonsense, and I'm, you know, the reason I say that it's nonsense is I think that Judge Clifton identified it. If you see how this case came, we file an amended petition, the State files an opposition saying that our claims are not exhausted. Then we file an opposition saying, look, they're exhausted. If they're not exhausted, they're technically exhausted. We cited Coleman v. Thompson, and we cited that we have no adequate State process. And we also said, if you don't give us any of those remedies, then we'll go back and do and get Ryan's relief. The State didn't reply. Then Judge Dawson enters the orders talking about technical exhaustion. Well, you know what? And then orders the State to file their procedural defenses. You know what the State says at page 177 of their motion to dismiss? The Court's analysis regarding law of the case and technical exhaustion is right on the money. Then later they say, no, they don't tell they don't talk about any kind of NECA remedy. They say that ground three, the Polk round, our Polk claim, would be, although technically exhausted, as this Court said, they're talking about how great the Court's decision on technical exhaustion was. Roberts, to the mic. Yeah, sorry. I get a little carried away. And then they say, you don't have any remedies because you're going to be defaulted under our one-year rule and our raise it or waive it rule. Nothing about this NECA remedy. So talk about cynicism. Talk about telling one judge one thing and another judge another thing. So I think that this technical exhaustion, forget about it. Now, do we have ineffective assistance of appellate counsel sufficient enough to supply the cause to overcome the procedural default? I think that Judge Dawson, not to borrow my friend Mr. Schultz's comment, was right on the money when he said there was ineffective assistance, because he said that, remember, when you're doing a Federal analysis of an IAC appellate claim, the prejudice and the deficient performance prongs overlap. So what he did is he got right to the merits. And he dropped a footnote in his final order, I think it's footnote 45, where he talks about how the State lawyer, Ms. Pinkston's appellate attorney, and the lawyer who argued it at the oral argument, pretty much conceded during their post-conviction relief testimony that they had completely screwed the case up. I mean, they cited one case on the Polk issue, even though trial counsel had set the case up, put it right on the tee, and then appellate counsel completely blows it. Judge Dawson saw that. Judge Dawson said there was clear deficient performance. Well, see, I'm not sure it's quite so simple, because at the time they're submitting their papers on appeal, Bifert hasn't come out. And so under Nevada State law, the instruction that was given was the instruction being given in all the cases which had been approved by the Nevada Supreme Court in the Whatchamacallit case. In Powell, and then Castlin. And so I'm not surprised that lawyers were making the argument. But it was far from a sure thing argument. And there is no federal argument, unless you can get the Nevada Supreme Court to recognize that the previous instruction was deficient. They must have said enough to cause this case to be, the direct appeal of this case, to be put into the stack that wasn't going to be disposed of until after Bifert comes out. And so, and there was, although perhaps not very well supported, a Nevada State law claim stated. So the problem for me becomes, is the failure to federalize a claim that isn't at that point established under Nevada State law, deficient performance under Strickland? As the facts played out, it's apparent that there was prejudice because the Nevada Supreme Court did come out with Bifert. But I don't think Bifert's anything close to a sure thing. So how is the performance deficient? Because, and I think the Nevada Supreme Court, that's why I was reaching back for the Garner opinion, I think the Nevada Supreme Court gives us that. If you look at footnote 9 in Garner, what they say is, This does not mean, however, that the reasoning in Bifert is unprecedented. Although Bifert expressly abandoned some recent decisions of this Court, it also relies on longstanding statutory language and other prior decisions of this Court in doing so. So what the Nevada Supreme Court said in August of 2000, right in the money shot when it comes to my client's lawyer writing her appeal. Now, the appeal's been written before. Well, it's been written before. It was disposed of in March, and it was held for Bifert. At one point I looked, but I think the papers were submitted in 97, no, it must have been 98. It was convicted. Convicted in 97, so 98, 99, something like that. But, yes, and she didn't the oral argument was not until, I want to say maybe a couple of days before Bifert came down, because if you look at the, and we submitted the transcript of the oral argument. If you look at the oral argument, the judges who wrote the Bifert, who sat on Pinkston's case were asking Bifert questions. And one of them was Justice Maupin. He was very interested in that, because he wrote the concurring opinion in Bifert. So he was all over it. And as you may, as you understand, our stand-alone claim, I'm sorry, is the failure to federalize that claim before the State law claim has been established. We're in effect being asked to say the failure to federalize a claim is deficient performance. Absolutely. The failure to federalize. All by itself? This Court's decision in Galvin v. Alaska talks about that. Well, understand that the ineffective assistance of counsel claim that we have is the failure to federalize, the failure to properly argue it. Now, we had a completely different lawyer argue the case than wrote the pathetic brief, and then the failure to ask for rehearing after Bifert came down. Now, that was terrible. I'm trying to sit there and figure out, okay, suppose I'm Pinkston's lawyer. What sense do I, or how do I understand the dismissal of the direct appeal, the denial of the direct appeal, and read the somewhat sketchy notice which discusses this issue not at all? Not at all. And all I can come up with, really, is that, well, Bifert's claim got shot down because they decided it wouldn't have made any difference in his case, and we'll still make sure you get to the harmless airbreak-type issues, because it's not implausible that somebody looks at this case and says, on the factual scenario behind the crime, there's no real difference between deliberation, premeditation, and so forth. It wouldn't have mattered here, either. And so, how can we really say the attorney was deficient to have not read the denial in that way? Well, I don't think trial counsel in 1997 was out on the cutting edge when she proffered a Bifert instruction. And, you know, really, I think what wins it for me on that question, Judge Clifton, is the footnote that Judge Dawson drops where he talks about what appellate counsel said in the post-conviction evidentiary hearing, I think it's footnote 45. He says, I thought I federalized it. I thought by saying due process, I federalized it. Gee, I'm sorry. I would do it over again if I had another chance. So thank God for his candor. I mean, really, to me, that's the best answer. The additional answer is, when you're looking at an ineffective assistance of appellate counsel claim, the two prongs merge, really. So as Judge Dawson said, I've got to look at the merits of this claim to see whether or not there was an effective assistance of appellate counsel. And once he did that, it was clear. It was clear, because it was Polk. And Polk and Chambers have already said that the failure to instruct pursuant to, you know, three separate elements is contrary to an unreasonable application of clearly established Supreme Court law, i.e., Winship and Sandstrom. Now, if I've answered that adequately, I want to talk about harmless error. Please talk about harmless error. With all due respect to Ms. Rasmussen, my case is different from Ms. Babs, because my case is not an alternative theory of liability case. My case is Barbara Pinkston was charged and tried as a principal to murder and only as a principal to murder. So we don't have felony murder. We don't have a complex liability. We don't have conspiracy to commit murder like we did in Winfrey, cluttering up the harmless error analysis. Really, I don't think I can say much more or say it much better than the way Judge Dawson did. And if you start from the premise that this Court started from in Medelio, I believe Medelio v. Yates recently cited in my briefing, that what Brecht is is codiacus. And what that is, is this Court, the three of you, sitting in review of that record, my record, must review the totality of the facts, the facts of the record, and then without taking out the injury that failure to instruct on deliberation did. Now, the State argues that my harmlessness analysis is ameliorated or is somewhat weakened by the fact that our theory of defense was self-defense at trial. That is not a completely accurate statement. The theory of defense was twofold. Number one, it was the State was unable to prove premeditation. And when, if you look at the final argument, closing argument, Ms. Melia, she says that, finally, she says, remember two things when you go to deliberate. You were unable to prove premeditation, and they couldn't disprove that this was self-defense. Well, they were also instructed on imperfect self-defense. So if it was not self-defense, then it was something less than self-defense, which would have exposed Ms. Pinkston to criminal liability. But what we're saying is it wasn't first-degree murder. And the Chambers case also, I'm sorry. What's the overwhelming evidence of deliberation, and doesn't that matter when we're doing the evaluation? I think that the quantum of proof on the deliberation point matters, but, and Judge Dawson makes this point very well, I think that what completely, because there was evidence that she, the options memo, the guardianship, those things were done prior to the act. But if you look at the instruction, the premeditation instruction says that she conformed the intent at the time of the act, that it's as quick as an instantaneous thought of the mind. So really, even if she had, even if the jury had believed Barbara Pinkston's testimony that the options memo was counseling and therapy, the guardianship letter had to do with what was going to happen on Monday morning in court, even if they had believed that, they would still be obliged to convict under the instructions and the argument. And that's what makes it, that's what, that's why it cannot be deemed harmless, because it was, it had a substantial and injurious effect on at least one juror's decision to vote guilt. Because really, at the end of the day, and I urge you to read that instruction, it literally says, at the time of the act. So as the Nevada Supreme Court correctly said in Byford, at the year 2000, this instruction completely blurs the distinction between first and second degree murder, because the jury is not told about deliberation. So you can't separate, Kodiakos tells you, Justice Stevens's concurring opinion in Brecht tells you, you can't look at this and conduct harmlessness review and separate out the error, because then you're just conducting a sufficiency of the evidence test, and that's not what this is about. This is a lot more complicated. Unless I have any other questions, I think I'm finished. Thank you. Thank you very much. Your Honor, very briefly, as to the arguments that we made in our, our subsequent filings in front of Judge Dosh, and I would just point out to you to, and ask you to remember that as we were litigating this issue, Judge Dawson had taken it upon himself to tell us how to litigate this case. He cited, in his first order, he cited Nika. He was aware of the Nika case, and Nika cites Bunkley. I think we can assume he was aware of all those issues. If you want to get all the way to the end of the case and deal with harmless error, I agree that the error, that, that Pinkston has not shown that the error was not harmless, and that's her burden. This is the rare case where you got it in writing, in the killer's hands, three and a half weeks before the murder, that one of her options to solve the child custody case, and ultimately that was the motivation for the killing. Child custody hearing was the very next day in family court in Las Vegas. She wrote about it in the options memo. That day she carried a loaded gun with her into the family fun park. She drove 20 miles with that gun. She shot Payne in the back. You're never going to find a case where somebody admits to you in writing, I've been thinking about it for a month. Under any definition of deliberation premeditation, that meets the test. Thank you. We thank you, we thank both counsel for your helpful arguments in this very complicated case. The case just argued is submitted. That concludes our calendar for today. We're adjourned.
judges: Tashima, Clifton, Murguia